**GEORGE RANKIN, IVAN BURNETT, GARY WADE HUNT and ERNEST SCHLOSS, Plaintiffs**

v.

**ALPHONSO CHRISTIAN, Commissioner of Public Safety, and DANIEL ANDINO, Warden, Richmond Penitentiary, Defendants**

Civil No. 80-1974

District Court of the Virgin Islands

Div. of St. Croix

June 6, 1974

EDWARD J. OCEAN, ESQ., Christiansted, St. Croix, V.I., *for plaintiffs*

HONORABLE VERNE HODGE, Attorney General (By HENRY L. FEUERZEIG, Assistant Attorney General), St. Thomas, V.I., *for defendants*

YOUNG, *District Judge*

## MEMORANDUM OPINION AND ORDER

Petitioners filed this action, which they styled a "petition to show cause," on January 21, 1974, proceeding pro se. On February 4, 1974, I construed this petition as one for a Writ of Habeas Corpus, appointed counsel for petitioners, and permitted them to amend their petition to address the proper party respondent, Warden Daniel Andino. Subsequently the Government moved to dismiss. I denied this motion but granted petitioners leave to re-amend their petition to state more specific due process and equal protection violations.[1]

The facts have been stipulated to by counsel.[2] Simply stated, in June and December of 1973 the parole board "authorized"[3] petitioners' release; however, on both occa-

---

[1] The Government also has moved to dismiss the reamended petition. I need not rule on this motion as I shall reach the merits in this Opinion.

[2] See Appendix I.

[3] This is the correct terminology, as pointed out by petitioners' counsel, and the stipulation of the parties has been appropriately amended.

sions the Governor disapproved their parole pursuant to 5
V.I.C. § 4604, which provides:

No release on parole shall become operative until the findings of
the Board of Parole and the terms of the parole have been ap-
proved by the Governor.

Petitioners have challenged both the constitutionality of
this statute and, more particularly, the constitutionality of
the Governor's policies of approval and disapproval.[4] I shall
discuss these challenges under three headings:

1. Have the Governor's policies of approval and disapproval
been so arbitrary as to deny petitioners due process of law?

2. Have the Governor's policies of approval and disapproval de-
prived petitioners of the equal protection of the laws?

3. Does 5 V.I.C. § 4604 deny petitioners procedural due process?

### I. ARBITRARINESS

As can be seen from the tabulation in Appendix II,
the Governor has denied 21 of 22 paroles authorized for
prisoners convicted of distributing narcotics. In this re-
gard, I find the Governor's decision to grant *one* parole to
be quite significant. Now, on the record before me, it is not
possible to say *why* the Governor has chosen to grant or
deny parole in any particular case. But I may take judicial
notice of the fact that there *were* special circumstances in
that one case—and that I myself brought these circum-
stances to the Governor's attention. Therefore, while one
can clearly infer that the Governor has a policy against
granting parole to those convicted of distribution, this
policy is not so absolute as to admit of no exceptions. In
short, I believe that if compelling individual reasons for
parole exist, then the Governor will weigh these against
whatever reasons he may have for his general policy
against parole for distributors. Since this is the case, I

---

[4] See Appendix II.

cannot say that "the 'protection of the individual against arbitrary action' which Mr. Justice Cardozo characterized as the very essence of due process" has been withheld. Slochower v. Board of Educ., 350 U.S. 551, 559 (1956), citing Ohio Bell Tel. Co. v. Public Util. Comm'n, 301 U.S. 292, 302 (1937). This claim of unconstitutionality, then, must be resolved against the petitioners.[5]

## II. EQUAL PROTECTION

There can be no question that those convicted of narcotics distribution receive distinctly less favorable parole treatment than all other convicts. Referring again to Appendix II, it may be seen that authorized paroles for distributors have been approved a mere 4.5% of the time, whereas parole approval for all other offenders is virtually automatic (94.1% approval). Still, the fact that a classification has been made does not alone render the practice unconstitutional. Rather, the question is whether the classification is a reasonable one. New York Rapid Transit Corp. v. City of New York, 303 U.S. 573 (1938).

■ I believe there is a rational basis for selecting out distributors for harsher treatment than others. Through his antiparole policy for distributors, the Governor may reasonably be attempting to curb a growing narcotics problem by "quarantining" convicted dealers and by upgrading the severity of the offense for added deterrence. I construe 5 V.I.C. § 4604 to entrust such wide policymaking discretion to the Governor, and if this discretion is exercised within the bounds of legality I may not interfere.

To say this, I need not necessarily agree with the Governor's policy, which indeed may appear somewhat eccentric. For example, the Governor's failure to distinguish

---

[5] Since I have adjudged the Governor's policy to be nonarbitrary I need not decide here whether, as the Government has contended, the Governor has a "right to be arbitrary."

between marijuana and "hard" drug offenders is not in accord with modern medical and sociological thinking. But I cannot hold that the Governor's more traditional view of these offenses is an illegitimate one. Nor can I say there is no validity in the contention that "soft" drug dealers are also likely to be, or to become, peddlers of "harder" narcotics. Likewise, some may question the Governor's automatic parole grants for offenses which would universally be rated as far more serious than distribution.[6] Few, for example, would rank sale of marijuana as comparable in gravity with murders or serious assaults. Yet the Governor has approved parole for 16 of 17 (94.1%) convicted murders authorized for parole and all six of those convicted of first degree assault.[7] Still, I cannot say that the Governor has not properly considered the epidemic characteristics of drug offenses as more amenable to quarantine than murder or assault, and it is possible that a higher rate of recidivism for drug offenders, as opposed to murderers, warrants an acceleration of the deterrence available against the lesser offense. Finally, one could point to several instances of parole approval as possibly indicating the classification of *distributors* is capricious. For example, the Governor approved parole for a prisoner convicted of possessing 21 decks of heroin and for another convicted of smuggling 15 pounds of marijuana.[8] But while it might

---

[6] The United States Parole Board makes the following judgments as to the relative severity of narcotics and other offenses:

"*Category C—Moderate Severity Offenses*
. . . Sale of marijuana (less than $5,000) . . .
*Category D—High Severity Offenses*
. . . Sale of marijuana ($5,000 or more) . . . Sale of "Heavy Narcotics" to support own habit" . . . .
*Category E—Very High Severity Offenses*
. . . Assault (serious injury) . . . Sale of "Heavy Narcotics" for profit . . . .
*Category F—Greatest Severity Offenses*
. . . Kidnapping . . . Willful homicide . . . .
See Battle v. Norton, 365 F.Supp. 925, 934 (D. Conn. 1973) (Appendix II).

[7] See Appendices.

[8] See Appendix II.

seem more logical to have included such cases in a narcotics-quarantine policy,[9] the Governor *did* have to draw a line somewhere and I am loath to find that his strict limitation of disfavored treatment to distributors is irrational.

Critical to any additional consideration of the appropriateness of the Governor's policy is my philosophy of parole. I believe that parole is not just an aid to individual rehabilitation, but that it is also a legitimate tool to effect society-wide policies of deterrence. My thoughts on this subject were well expressed by the Court in Battle v. Norton, 365 F.Supp. 925, 931–932 (D. Conn. 1973):

> Whether and to what extent general deterrence should be considered in parole decisions as a matter of policy is not a matter for this Court. [Citation omitted.] So long as the factor is within the discretion vested in the Board by Congress a parole decision relying upon it is immune from judicial interference.
>
> Petitioner is really contending that the parole decision must focus exclusively on the prisoner's progress toward rehabilitation, and that such an approach precludes the designation of any time period as a minimum . . . . The Board . . . stresses . . . that in some cases "offense severity will so outweigh favorable risk that a prisoner . . . will not be paroled. . .".

The Court then went on to state, at 932:

> The Board must make a judgment as to an appropriate minimum time period for such prisoners, always retaining the discretion to release at an even earlier date in the truly extraordinary case. Such an approach does not, as petitioner alleges, interfere with the sentencing jurisdiction of the courts. If a court wants a defendant to serve a brief sentence, or no sentence at all, it has ample techniques for accomplishing that result.

I think that the Governor has similar discretion under our statutory scheme to deny parole to whole classes of prisoners for general policy reasons, except of course "in the truly extraordinary case." Since the Governor has not

---

[9] And perhaps to have excluded those convicted of minor sales of marijuana.

overstepped the equal protection clause in the wielding of this discretion, supra, my review on this matter may go no further.

## III. PROCEDURAL DUE PROCESS

In the wake of Morrissey v. Brewer, 408 U.S. 471 (1972) (rudimentary due process hearing required for parole revocation), a number of courts have considered afresh the question whether due process applies to the denial of parole. The majority have rejected the view that due process applies at the time parole is denied,[10] but a substantial and growing minority have differed,[11] at least to the extent of requiring reasons for a denial to be given to an inmate. I believe that the import of Morrissey, and controlling pre-Morrissey Third Circuit precedent, compel me to follow the majority line of decisions.[12]

---

[10] See Farries v. United States Bd. of Parole, 484 F.2d 948 (7th Cir. 1973); Scarpa v. United States Bd. of Parole, 477 F.2d 278 (5th Cir. 1973) (en banc); Barradale v. United States Bd. of Parole and Pardons, 362 F.Supp. 338 (M.D. Penn. 1973); Stone v. United States Bd. of Parole, 360 F.Supp. 22 (D. Md. 1973); Bradford v. Weinstein, 357 F.Supp. 1127 (E.D.N.C. 1973); Williams v. United States, 327 F.Supp. 1127 (S.D.N.Y. 1970).

[11] See United States ex rel Harrison v. Pace, 357 F.Supp. 354 (E.D. Pa. 1973); United States v. Chairman, N.Y. State Bd. of Parole, 363 F.Supp. 416 (E.D.N.Y. 1973); In re Sturm, 15 Cr. L. Rep. 2159 (Cal. Sup. Ct., Apr. 18, 1974); Childs v. United States Bd. of Parole, 14 Cr. L. Rep. 2135 (D.C. Cir., Oct. 10, 1973); cf. King v. United States, 15 Crim. L. Rep. 2025 (7th Cir., March 13, 1974) (statutory).

[12] Two additional arguments by petitioner may be disposed of here. First, petitioner has contended that, under the bifurcated parole structure in the Virgin Islands, gubernatorial disapproval of parole board authorizations works as a *revocation* of a parole grant and thus comes literally under Morrissey's procedural strictures. I reject this argument as a solipsistic exercise and prefer to view our statute as a single process, leading to a parole grant *only* after gubernatorial approval.

Secondly, petitioner has advanced the "midnight" contention that a flat parole denial is cruel and unusual punishment, citing In re Ross, 15 Cr. L. Rep. 2049 (Cal. Sup. Ct., March 14, 1974). The critical factor in cruel and unusual punishment analysis, however, is the disproportionality of a sentence to the severity of the crime. Ross dealt with a *ten* year minimum sentence, without parole, for drug distributors, and condemned it. None of the petitioners in this case will serve more than three years. I hold that a three-year sentence, without parole, is not cruel and unusual punishment for a drug dealer.

461

As one commentator has well phrased it, "[w]hile the [Morrissey] opinion eschewed the theory that parole is a privilege, it approved the traditional idea of a special regime for parolees. Under this view of parole, the board exercises almost complete discretion over the choice of imprisonment or restricted freedom as the means to rehabilitate its charges. . .". 86 Harv. L. Rev. 95, 101 (1972). Significantly, the Morrissey Court stated that a parolee's "condition is very different from that of confinement in a prison." True, many courts have had logical difficulty in distinguishing the loss of liberty from parole revocation from various in-prison decisions which just as certainly increase actual time served in prison. See 86 Harv. L. Rev. at 101 nn. 31–32; note 11 supra. The Morrissey Court, however, may have intended a legal, rather than logical delimitation of due process rights. To be sure, Morrissey's language, supra, may be merely a tacit approval of the "minimum due process" requirements which many courts have demanded for prison disciplinary hearings. E.g., Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971). Likewise, Morrissey's distinction between in and out of prison process would not necessarily be inconsistent with a right to written reasons when parole is denied.

Nevertheless, until the Supreme Court provides some definitive resolution to this problem, I believe I must follow the Third Circuit's pre-Morrissey precedents, which immunize parole decisions from the reach of due process. See United States v. Frederick, 405 F.2d 129 (3d Cir. 1968); Mosley v. Ashley, 459 F.2d 477 (3d Cir. 1972); Madden v. New Jersey State Bd. of Parole, 438 F.2d 1189 (3d Cir. 1971). But this holding should not necessarily indicate that I believe these decisions are correct or will stand the test of time. I will simply not take it upon myself to enlarge due process protections for prisoners in this jurisdiction at this time. But I would most strongly urge the Governor

that in all future parole disapprovals he give the parole eligible specific written reasons for his decision. This practice would be both much fairer and more open than the current summary procedure and would free the Governor's parole powers from much of the substantial cloud which, even after this Opinion, lingers over them.

ORDER

On the premises considered, in accordance with the above Opinion, the petitions for a Writ of Habeas Corpus are DENIED.

Appendix I

STIPULATION

IT IS HEREBY STIPULATED AND AGREED between the parties, by the signatures of their undersigned counsel, that Melvin H. Evans has been Governor since July 1, 1969, that since that time the Board of Parole recommended that the following individuals be paroled, that they were convicted for the offenses noted after their names, and that Governor Evans approved or disapproved parole for each as indicated:

*Authorizations of December 1969*

| Name | Offense of which Convicted | Action of Governor |
|------|---------------------------|--------------------|
| Eric Antonio Barnes | Drawing and Delivering Worthless Checks, Embezzlement | Approved |
| Santana Robles Colon | Assault First Degree | Approved |
| Clement Dickerson | Robbery, Burglary, Grand Larceny | Approved |
| Vernon Dunlop | Assault First Degree | Approved |
| Reginald I. Jeffers | Murder Second Degree | Approved |
| Camille Smalls | Murder First Degree | Approved |

463

## Authorizations of April 1970

| Name | Offense of which Convicted | Action of Governor |
|---|---|---|
| Carmen Maria C. Cruz | Accessory after the Fact | Approved |

## Authorizations of June 1970

| | | |
|---|---|---|
| Raymond U. Joseph | Forgery | Approved |
| James Joseph O'Hara | Obtaining Money or Property under False Pretenses | Approved |
| Sidney G. N. Timothy | Burglary First Degree | Approved |

## Authorizations of December 1970

| | | |
|---|---|---|
| Carlos Corcino Felix | Burglary Third Degree | Approved |
| Antonio Escobar Garciaz | Murder First Degree | Approved |
| Rudiel A. Pilgrim | Burglary, Grand Larceny, Fleeing Arrest | Approved |
| Junito Ortiz Rivera | Assault with Intent to Commit Robbery | Approved |
| Juan Asencio Rolden | Murder First Degree | Approved |

## Authorizations of July 1971

| | | |
|---|---|---|
| Charles W. Callwood | Robbery | Approved |
| James Duvergee | Assault First Degree | Approved |
| Errol Benson Hughes | Robbery | Approved |
| Rene Joseph | Rape Second Degree | Approved |
| Elric Meyers | Robbery | Approved |
| Luis Angel Navarro | Possession of Narcotic Drugs (21 decks of heroin) | Approved |
| Salvadore S. Ortiz | Involuntary Manslaughter | Approved |
| Benito S. Rivera | Murder First Degree | Approved |
| Hipolito S. Rivera | Murder First Degree | Approved |
| Rafael A. Rivera | Murder Second Degree | Approved |
| George McIvor Stoute | Murder Second Degree | Approved |
| Rupert Webbe | Mayhem | Approved |
| David A. Wynn | Escape from Custody | Approved |

## Authorizations of December 1971

No records available.

## Authorizations of June 1972

| | | |
|---|---|---|
| Luis Alphonso Barrata | Illegal Possession of Narcotic Drugs with Intent to Barter, Exchange and Sell (Smuggling, 15 pounds marihuana) | Approved |
| Francis Bryan | Assault First Degree with Intent to Commit Robbery | Approved |
| Lawrence Henry | Assault Third Degree | Approved |

| Name | Offense of which Convicted | Action of Governor |
|---|---|---|
| Steven Klein | Unauthorized Use of Motor Vehicle | Approved |
| Manuel Torres | Robbery | Approved |

### Authorizations of December 11, 1972

| Name | Offense of which Convicted | Action of Governor |
|---|---|---|
| Alan Crantoun | Assault First Degree and Brandishing Firearm | Approved |
| Lynn Dickerson | Robbery | Disapproved |
| Leroy Elcock | Murder Second Degree | Approved |
| Thomas Lawrence | Robbery | Disapproved |
| Julio C. Marine | Robbery | Approved |
| Richard A. Morris | Burglary Third Degree | Approved |
| John Olsow | Obtaining Money under False Pretense | Approved |
| Carmelo Torres | Rape First Degree | Disapproved |
| Carlos H. Torres | Murder Second Degree | Approved |
| Eldridge Venzen | Forgery | Approved |
| Leonard Williams | Attempted Rape and Escape | Approved |
| Reginald Yearwood | Robbery | Approved |

### Authorizations of June 1973

| Name | Offense of which Convicted | Action of Governor |
|---|---|---|
| Luther Benjamin, Jr. | Attempted Robbery | Approved |
| Miquel Benitez | Possession and Sale of Narcotics | Disapproved |
| Ivan L. Burnett | Unlawful Distribution of Controlled Substance | Disapproved |
| Pierre Celestin | Unlawful Distribution of Controlled Substance | Disapproved |
| Lynn Dickerson | Robbery | Approved |
| Jesus Estien | Possession and Sale of Narcotics | Disapproved |
| Wayne Holst | Buying and Receiving Stolen Goods | Approved |
| Gary Wade Hunt | Unlawful Distribution of Controlled Substance | Disapproved |
| Thomas Lawrence | Robbery | Approved |
| Kenneth N. Little | Unlawful Distribution of Controlled Substance | Disapproved |
| Domingo O. Navarro | Murder Second Degree, Burglary, Escape, Assault First Degree | Approved |
| George Rankin | Unlawful Distribution of Controlled Substance | Disapproved |
| Ernest Schloss | Unlawful Distribution of Controlled Substance | Disapproved |
| Santos Valentin Ruiz | Murder Second Degree, Assault First Degree, Escape, Burglary Third Degree | Disapproved |

465

| Name | Offense of which Convicted | Action of Governor |
|---|---|---|
| Robert E. Williams | Robbery | Approved |
| Carlos S. Ramos | Possession and Sale of Narcotics | Disapproved |
| Jose Rivera | Possession and Sale of Narcotics | Disapproved |
| Carmelo Torres | Rape First Degree | Disapproved |

*Authorizations of December 17, 1973*

| Name | Offense of which Convicted | Action of Governor |
|---|---|---|
| Ivan Burnett | Unlawful Distribution of Controlled Substance | Disapproved |
| Liston Phillips | Assault, Mayhem | Approved |
| Pierre Celestin | Unlawful Distribution of Controlled Substance | Disapproved |
| Gary Wade Hunt | Unlawful Distribution of Controlled Substance | Disapproved |
| Kenneth N. Little | Unlawful Distribution of Controlled Substance | Approved |
| Ernest Schloss | Unlawful Distribution of Controlled Substance | Disapproved |
| George Rankin | Unlawful Distribution of Controlled Substance | Disapproved |
| Jose Rivera | Possession and Sale of Narcotics | Disapproved |
| Miquel Benitez | Possession and Sale of Narcotics | Disapproved |
| Carmelo Torres | Rape First Degree | Approved |
| Carlos S. Ramos | Possession and Sale of Narcotics | Disapproved |
| Jesus Estien | Unlawful Possession and Sale of Narcotics | Disapproved |
| Santos Valentin Ruiz | Murder Second Degree | Approved |
| Rafael Hendricks | Assault Third Degree | Approved |
| Juan C. Morales | Murder Second Degree | Approved |
| David Castillo | Murder Second Degree | Approved |
| Charlesworth John | Murder Second Degree | Approved |
| Leslie Tiwari | Grand Larceny, Burglary Third Degree | Approved |
| Michael George | Illegal Possession and Sale of Controlled Substance | Disapproved |
| Jose Jacobs | Voluntary Manslaughter | Approved |
| David N. Santiago | Attempted Burglary | Approved |
| Hipolito Acosta | Burglary Third Degree, Grand Larceny | Approved |
| Eustace Lewis | Robbery | Approved |
| Eugene Bastion | Assault First Degree | Approved |
| Roy A. Hansen | Grand Larceny | Approved |
| Samuel Andrews | Robbery | Approved |
| Lionel Magras | Murder Second Degree, Assault | Approved |

## Appendix II

TABULATION OF GUBERNATORIAL APPROVALS

| Date | Parole Bd. Authorizations | | Gubernatorial App'l | |
|------|---------------------------|---|---------------------|---|
| | Distribution of Narcotics | All other Offenses | Distribution of Narcotics | All other Offenses |
| 12/69 | 0 | 6 | 0 | 6 |
| 4/70 | 0 | 1 | 0 | 1 |
| 6/70 | 0 | 3 | 0 | 3 |
| 12/70 | 0 | 5 | 0 | 5 |
| 7/71 | — NO | RECORDS | AVAILABLE | — |
| 6/72 | 0 | 5 | 0 | 5 |
| 12/72 | 0 | 12 | 0 | 9 |
| 6/73 | 11 | 7 | 0 | 6 |
| 12/73 | 11 | 16 | 1 | 16 |
| TOTAL | 22 | 68 | 1 | 64 |

| Overall % Approved | Overall % Approved |
|--------------------|--------------------|
| 4.5% | 94.1% |
| | % Approved (Murder) (16/17) |
| | 94.1% |
| | % Approved (Assault First) (6/6) |
| | 100% |

467