Lawrence W. ROWE

v.

**Julius T. CUYLER, et al.**

**Civ. A. No. 80–4976.**

United States District Court,
E. D. Pennsylvania.

Feb. 16, 1982.

As Amended Feb. 25, 1982.

---

Lawrence W. Rowe, pro se.

Maria Parisi Vickers, Deputy Atty. Gen., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Plaintiff, Lawrence W. Rowe, an inmate at the State Correctional Institution at Graterford, Pennsylvania ("SCIG"), filed this civil action *pro se* against various state pris-

on officials to contest the denial of his application for a temporary home furlough, one of several types of pre-release programs authorized by Pennsylvania law. Presently before the Court is defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment. For the reasons set forth below, the motion, treated as a motion to dismiss, will be granted.

## I. *Background*

Pennsylvania law provides for the establishment of pre-release centers and programs, and authorizes the Bureau of Correction to "promulgate rules and regulations for granting and administering release plans and ... [to] determine those inmates who may participate in any plan." Pa.Stat.Ann. tit. 61, § 1053 (Purdon Supp. 1981–1982). Pursuant to this statute, the Bureau of Correction has promulgated regulations defining the pre-release programs available and specifying the criteria determining whether an inmate will be permitted to participate. 37 Pa.Code § 95.111 *et seq.* Certain minimum criteria which must be satisfied by every inmate in order to be eligible are listed in section 95.113. These criteria include some objective requirements, such as the completion of the inmate's minimum sentence and the absence of existing detainers. They also include some criteria whose satisfaction depends upon an exercise of an official's discretion, such as the favorable recommendation of the correctional facility staff and approval by the correctional superintendent. Even if an inmate satisfies these minimum criteria, however, correctional authorities may deny participation on other subjective grounds. As the regulations state, "[o]ther serious considerations such as the evaluation of the staff of the progress of the inmate, the relevancy of the particular pre-release program to the reintegration of the inmate and

the availability of space shall be taken into consideration." 37 Pa.Code § 95.113(a).

In deciding the motion to dismiss, we take as true the well-pleaded allegations of the complaint.[1] *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). Moreover, since the complaint here was filed *pro se,* we read the allegations with less stringent scrutiny than we would formal allegations of a complaint drafted by a lawyer. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972). Reviewed in light of these principles, the complaint alleges the following facts. Plaintiff applied for the pre-release program sometime in 1980. His application satisfied all of the objective minimum criteria for eligibility and several of the subjective minimum criteria. Nevertheless, because of his extensive criminal record, drug history and having jumped bail once, plaintiff failed to receive favorable recommendations from three members of the correctional facility staff: the Deputy Superintendent of Treatment, defendant Lawrence Reid; the Director of Treatment, defendant Thomas Stachelek; and plaintiff's counselor, defendant James Madden.[2] Plaintiff also failed to receive approval by the correctional facility Superintendent, defendant Julius T. Cuyler, which is another minimum requirement for eligibility. Accordingly, plaintiff's application was rejected. This action followed.

In challenging the defendants' refusal to permit plaintiff to participate, plaintiff claims that the defendants deprived him of due process of law by failing to follow the procedures required by Pennsylvania regulations in considering his application. Plaintiff also contends that he was denied equal protection because other inmates with similar criminal records, drug histories and histories of escape on bail were permitted to participate. We turn now to these claims.

---

1. Although defendants have attached copies of several documents as exhibits to their motion, the Court did not consider the documents in reaching its decision.

2. Plaintiff apparently does not dispute that he has an extensive criminal record and drug history, and has jumped bail once.

**300**

## II. *Due Process*

■ The Constitution does not require a state to establish a pre-release program like the program involved here. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979). Moreover, a state choosing to establish such a program may accord broad discretion to those deciding who may participate. Once such a program is established, however, due process considerations attach, placing outer limits on the exercise of official discretion. For example, in making their decision, reviewing officials may not consider factors lying outside the statutorily prescribed bounds of their discretion. *Winsett v. McGinnes*, 617 F.2d 996, 1007–1008 (3d Cir. 1980), *cert. denied*, 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981). Likewise, participation in such a program may not be denied for arbitrary or constitutionally impermissible reasons. *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980).

■ In the present case, plaintiff does not claim that his application was rejected because of the consideration of impermissible criteria. Instead, plaintiff claims that defendants reached their decisions to deny favorable recommendations without following the procedures required. To be specific, plaintiff contends that defendant Madden improperly based his recommendation that plaintiff's application be refused on a single interview, and that defendants Reid and Stachelek acted improperly in making their like recommendations without having conducted an interview themselves. In so arguing, plaintiff relies on regulations establishing those requirements found at sections 95.41(b) [3] and 95.32(2) [4] of Title 37, Pa.Code. These regulations were promulgated in 1971. *See* 1 Pa.Bull. 1655, 1663, 1664 (1971). In 1973, however, the Bureau of Corrections promulgated the regulations governing participation in pre-release programs, including temporary home furloughs, which are now found as amended at 37 Pa.Code §§ 95.111 et seq. *See* 3 Pa.Bull. 590 (1973). Paragraph D of the order promulgating the regulations stated: "This order shall take effect upon publication in the *Pennsylvania Bulletin*, supersede all previous directives *on this subject* and apply to all State Regional Correctional Institutions." *Id.* (Emphasis added). While the regulations found at § 95.111 et seq. differ in many respects from the earlier regulations found at § 95.31 et seq., both cover the same general subject of pre-release programs, including a statement of the purpose of each program, the criteria for eligibility, and procedures for determining whether an inmate should be permitted to participate. Since paragraph D of the order promulgating § 95.111 et seq. expressly provided that all previous directives "on this *subject*," were superseded, the regulations at § 95.31 et seq. are no longer of any effect.[5] Since plaintiff does

---

**3.** Section 95.41(b) provides:

> (b) *An evaluation for furlough placement will not be based on a single interview.* The counselor shall be personally familiar with the inmate. In addition to knowledge of the tangible facts, he should be able to assess his attitudes, feelings, emotional reactions, therapeutic need, and expected response to furlough. He shall be able to present to his supervisor an accurate, objective, and complete picture of the inmate.

37 Pa.Code § 95.41(b) (emphasis added).

**4.** Section 95.32(2) provides: "The director of treatment services, (deputy superintendent for inmate services), shall be responsible for the following tasks: (1) .... (2) Conducting a personal evaluation interview with the prospective candidates." *Id.* § 95.32(2). In his complaint, plaintiff alleged that the failure to conduct a personal interview violated not § 95.-32(2) but § 95.22(b)(2), which provides: "(b) Evaluation, referral, and records. The director of treatment services shall be responsible for the following tasks: (1) .... (2) The conduct of a personal interview with each prospective candidate." Section 95.22, however, ostensibly governs participation in community treatment programs, rather than participation in the temporary home furlough program for which plaintiff applied. *See id.* §§ 95.21 et seq. Nevertheless, since § 95.22(b)(2) is substantially identical to § 95.32(2), the Court has treated plaintiff's complaint as though plaintiff had relied upon the correct provision.

**5.** It might be argued that the failure to remove the superseded regulations from the *Pennsylvania Code*, the official codification of state regulations, estops defendants from contending that the superseded regulations no longer govern participation in pre-release programs. In order

not suggest that the procedures required by the regulations currently in force were not followed, plaintiff's claim that defendants violated his right to due process of law must be dismissed.

### III. Equal Protection

Plaintiff's second claim is that defendants' rejection of his application denied plaintiff equal protection of the laws as guaranteed by the Fourteenth Amendment because other "inmates with deplorable institutional records, inmates with a history of assault and escape, and inmates who have [a] long drug history and absconded during their involvement in the Pre-Release programs have participated and still participate in same." Plaintiff does not contend that the state cannot constitutionally deny participation in a pre-release program because of an inmate's long criminal record, history of drug use, or record of having jumped bail, but merely claims that defendants unconstitutionally discriminated against him among inmates of like background.

█ The difficulty with plaintiff's claim, stated as a violation of the Equal Protection Clause, is that the three factors mentioned are but a small cluster out of a galaxy of considerations which might legitimately figure in a decision to grant or deny pre-release status. As the Supreme Court has stated in *Greenholtz*, in the analogous context of parole decisions, "[t]he entire inquiry is, in a sense, an 'equity' type judgment that cannot always be articulated in traditional findings." *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, supra*, 442 U.S. at 8, 99 S.Ct. at 2104. This is unavoidable, for no two prisoners, being different human beings, will possess identical backgrounds and characters. Indeed, it is difficult to believe that any two prisoners could ever be considered "similarly situated" for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics. Furthermore, whether or not an inmate is able to benefit from participation in pre-release is inherently a subjective determination not susceptible of mathematically precise analysis. The grounds articulated for denial may only be highlights of a catalogue of valid objections, any one of which might support the decision. Nothing in the Constitution requires the decision-makers to succeed in the impracticable and unduly burdensome task of articulating each and every factor considered in reaching the decision in order to demonstrate that an applicant is not being discriminated against, so long as the reasons given for denial are among those rationally related to the program's objectives. *Taliferro v. New Jersey Parole Board*, 460 F.2d 289, 290 (3d Cir. 1972) (per curiam); *Bennett v. People of the State of California*, 406 F.2d 36, 38–39 (9th Cir. 1969); *Marciano v. Coughlin*, 510 F.Supp. 1034, 1039 (E.D.N.Y.1981); *Sanno v. Preiser*, 397 F.Supp. 560, 561–562 (S.D.N.Y.1975). Accordingly, plaintiff's equal protection claim must also be dismissed.

### IV. Summary

For the reasons set forth above, the plaintiff has failed to state a claim that the defendants' rejection violated plaintiff's rights to due process and equal protection under the Fourteenth Amendment. Ac-

---

to succeed in raising a claim of estoppel, however, the plaintiff must have been prejudiced by his reliance on the misrepresentation alleged. *Insurance Company of North America v. McCleave*, 462 F.2d 587, 588 (3d Cir. 1972) (per curiam). In the present case, plaintiff would have to allege that the failure to receive additional interviews caused the denial of his application. The factors, however, which led the defendants to their decision were the plaintiff's long criminal record, drug history, and having once jumped bail—facts which could not be altered by granting a second or third interview. Moreover, there is nothing in plaintiff's complaint to suggest that the impression of plaintiff's progress conveyed in the one interview was inaccurate or incomplete. Thus, plaintiff does not, and probably could not, set forth facts which could be read to state a claim that the state should be estopped from disregarding the superseded regulations.

cordingly, defendants' motion to dismiss will be granted.

An appropriate Order will be entered.