**Richard CARTER**

v.

**J. Kevin KANE.**

**Civil No. 90–6639.**

United States District Court,
E.D. Pennsylvania.

May 15, 1996.

Richard Carter, Graterford, PA, pro se.

John O.J. Shellenberger, III, Beth Anne Smith, Office of Attorney General, Philadelphia, PA, for J. Kevin Kane.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Now before the court is a Report and Recommendation ("R & R") filed by Magistrate Judge Diane M. Welsh on January 5, 1996, as well as objections to that report filed by both the plaintiff, Richard Carter, and the defendant, J. Kevin Kane. The underlying case involves allegations by Mr. Carter based upon two hearings conducted by Mr. Kane, a hearing examiner with the Pennsylvania Department of Corrections. At the first hearing, Carter alleges, Kane violated his due process rights by enhancing the administrative penalty he imposed on Carter because Carter pleaded not guilty to a misconduct charge. At the second hearing, Carter asserts, Kane (1) found him guilty on the basis of inadequate evidence, and (2) declined to recuse himself and ruled against Carter because Carter had brought this lawsuit. (Carter added his claims based upon the second hearing in an amendment to his complaint.)

Kane has moved for summary judgment on a range of grounds; Judge Welsh's R & R addresses this motion. I will begin by discussing Carter's claims based upon his first hearing before Kane.

## I. The First Hearing.

I discussed the basis for Carter's claim based upon the first hearing in some detail in a memorandum dated June 30, 1993 (which I will call the "1993 Memorandum"). In that memorandum, I observed that Carter's claim that Kane enhanced his sentence for pleading not guilty was at bottom a claim that Carter's due process right to an impartial examiner had been violated, as the act of enhancing a defendant's sentence for pleading not guilty called into question the examiner's impartiality. 1993 Memorandum at 6.

■■■ Kane's objections raise the question whether the right to an impartial examiner at a prison disciplinary proceeding is one of substantive or of procedural due process. In the abstract, at least, that right can be framed in either way. *Wolff v. McDonnell,* 418 U.S. 539, 570–71, 94 S.Ct. 2963, 2981–82, 41 L.Ed.2d 935 (1974), made clear that a prisoner has a procedural due process right to an impartial examiner at prison disciplinary proceedings (or at least at those proceedings in which a constitutionally significant interest of the prisoner is at stake). Claims of arbitrary governmental action can also, however, be cast in substantive due process terms. I will begin by discussing Carter's claim as one of a violation of substantive due process.

### A. *Substantive Due Process*

■■■ My 1993 memorandum, without elaboration, described the right to an impartial hearing examiner as one of substantive due process. I will now provide some content to that description. The fact that a particular governmental decision does not implicate a constitutionally protected interest, such as a liberty or property interest, does not mean that there are no restrictions on the manner in which the government may make that decision. A governmental decision may still not be made in an "arbitrary or constitutionally impermissible" fashion. *Block v. Potter,* 631 F.2d 233, 236 (3rd Cir. 1980). Thus, for instance, a parole board that takes retributive considerations into account in making a parole decision, even though the board's mandate only empowers it to base its decisions on considerations of

recidivism and deterrence, may thereby act sufficiently arbitrarily to violate due process. *See id.* at 239–40 (finding that the use of an inmate's privileged background as a reason for denying him parole violated due process). Similarly, it may violate due process for a parole board to base a decision on evidence that it concedes to be false. *See Monroe v. Thigpen,* 932 F.2d 1437, 1442 (11th Cir.1991). The courts in both of the foregoing cases noted that the inmate had no liberty interest in the parole decision at issue, but nevertheless found that a parole board that makes a decision in an entirely arbitrary manner can thereby violate due process. In both cases, then, the right in question was presumably one of substantive due process.

■ Kane points out that, since my 1993 memorandum was filed, the Third Circuit has clarified the applicable standards for substantive due process violations. In *Fagan v. City of Vineland,* 22 F.3d 1296 (3rd Cir.1994) (in banc), the Third Circuit found that, in order to establish that governmental conduct violates substantive due process, a plaintiff must show that the conduct in question "shocks the conscience." *Id.* at 1304–05. The facts of *Fagan,* which involved a due process claim based upon a high-speed chase by police that led to a fatal accident, are not similar to those of the present case. However, the *Fagan* court made clear that it intended to reach a broad spectrum of substantive due process claims. *See id.* Indeed, as authority for its "shocks the conscience" standard, *Fagan* cited *Newell v. Brown,* 981 F.2d 880, 886 (6th Cir.1992), a case that applied that standard to a prison's assertedly arbitrary decision to transfer an inmate to a higher-security prison. It therefore seems clear that *Fagan*'s standard applies to the present case.

■ The "shocks the conscience" standard must, however, be applied with some atten-

tion to the particular circumstances of the case at hand. The district court in *Fagan* observed that a police officer's decision to initiate and continue pursuit of a fleeing suspect is necessarily made "in the heat of the moment," and that in such circumstances poor judgment alone will not shock the conscience. *Fagan v. City of Vineland,* 804 F.Supp. 591, 603 (D.N.J.1992), *aff'd,* 22 F.3d 1296 (3rd Cir.1994) (in banc). In other circumstances, the standard will apply differently. The Third Circuit acknowledged this fact in *Fagan* itself, in the course of reconciling its "shocks the conscience" standard with its previous cases applying a standard of "reckless disregard" to claims based on government officials' failure to prevent suicides by persons in their custody, *see, e.g., Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 464 (3rd Cir.1989). *Fagan* observed that "it can fairly be said that the judicial conscience is shocked by a governmental employee's reckless disregard of the constitutional rights of a person in custody," because "the government has restricted an individual's liberty and thereby increased his or her vulnerability to abusive governmental action or to private harm." *Fagan,* 22 F.3d at 1306.

■ In cases in which the conduct complained of is irrationality or arbitrariness in an administrative function of government, the application of the "shocks the conscience" standard will once again be different.[1] Government agencies generally need not make their decisions "in the heat of the moment," as the police officers in *Fagan* did; it is therefore appropriate to hold the decisions of those agencies to a somewhat higher standard. To the extent that a governmental function is adjudicatory, or quasi-judicial, in nature, the arbitrary exercise of official power in conducting that function is particularly likely to shock the conscience, because of the greater expectation of regularity in such situ-

---

1. Indeed, the *Fagan* court stated that the term "arbitrary" is synonymous with "conscience-shocking" for purposes of its analysis. 22 F.3d at 1304 n. 4. It made this observation because *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), the opinion upon which *Fagan* drew for its "shocks the conscience" standard, contained language that appeared to treat the two terms as equiva-

lent. *See Collins,* 503 U.S. at 127–29, 112 S.Ct. at 1070. The manner in which the *Fagan* court approached its "shocks the conscience" analysis, and in particular its emphasis on the importance of avoiding an "overly generous interpretation of the substantive component of the Due Process Clause," 22 F.3d at 1306 n. 6, must, however, inform any reading of the *Fagan* court's use of the word "arbitrary."

ations. *Fagan* thus may well be consistent with the holdings of both *Block* and of *Monroe;* for a parole board to display arbitrariness of the type at issue in those cases may well be shocking to the conscience.

■ Nevertheless, I cannot conclude that the arbitrary conduct alleged by Carter was sufficiently severe to shock the conscience. The irregularities alleged in both *Monroe* and *Block* were substantially more serious than those alleged in the present case. Most notably, *Monroe* and *Block* involved an inmate's eligibility for parole. By contrast, Carter asserts that he was inappropriately sentenced to an additional fifteen days of disciplinary custody, a period that he has apparently never served. Thus, the only harms Carter seems to have suffered as a result of Kane's conduct are (a) the possibility that he may be required to serve that fifteen-day sentence at some point in the future, and (b) the possible inclusion of the fifteen-day period on his prison record. 1993 Memorandum at 3. The relatively small degree of harm to Carter both renders Kane's decision somewhat less arbitrary (because the degree of care with which an official is expected to make a decision depends at least in part upon what is at stake) and renders the circumstances as a whole less shocking to the conscience. I therefore find that, after *Fagan,* Carter cannot make out a claim of violation of his substantive due process rights.

## B. Procedural Due Process

Thus, Carter's claim based upon the enhancement of his sentence can only be framed as one of a violation of his procedural due process rights. I will now address the defendants' summary judgment motion as it applies to this claim.

The defendants moved for summary judgment on the grounds of (i) qualified immunity and (ii) the recent decision of *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). As to the qualified immunity question, as Judge Welsh's R & R notes, R & R at 4, my 1993 memorandum found that Kane was not entitled to qualified

immunity because *Wolff*'s requirement of an impartial hearing examiner was clearly established, and because a reasonable hearing examiner would have known that penalizing an inmate for pleading not guilty violated *Wolff*'s rule. 1993 Memorandum at 6–7.

■ Kane's objections essentially seek to have me reconsider my 1993 ruling. Kane asserts, first, that a reasonable hearing examiner would have thought that his alleged conduct was impartial. Kane claims that Carter essentially admitted the underlying facts of the rule violation involved, but refused to plead guilty to the charge; this conduct, Kane asserts, justified penalizing Carter. Kane also argues that it is unreasonable to expect a hearing examiner to distinguish between rewarding persons for pleading guilty and penalizing them for declining to do so. I find these arguments unpersuasive. A hearing officer that treats inmates who invoke the hearing process as a burden or an inconvenience and penalizes them for doing so thereby undermines the purpose of the hearing process itself, which is to ensure regularity in the punishment of inmates. A reasonable hearing officer should certainly appreciate that penalizing an inmate for invoking his right to a hearing is inconsistent with the hearing officer's role as an impartial arbiter.[2]

■ Turning to *Sandin,* Kane asserts that *Sandin* establishes that transferring a prison inmate from the general prison population to disciplinary segregation does not implicate any liberty interest of the inmate's, so that, even if Carter had undergone the fifteen additional days of disciplinary segregation at issue, he had no entitlement to procedural due process as to this period. This assertion is mistaken. As Judge Welsh observes in her R & R (without relevant objection from Kane), the record in the present case contains some information on the nature of disciplinary segregation at Carter's institution, but provides very little information on the characteristics of life in the general prison population. R & R at 14–16. Without such a record, it is impossible to determine whether the particular form of

---

**2.** My 1993 memorandum also addressed this argument. 1993 Memorandum at 7 n. 10.

disciplinary segregation at issue "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300, *Sandin*'s standard for the existence of a liberty interest. *Cf. Gotcher v. Wood,* 66 F.3d 1097, 1101 (9th Cir.1995) (reversing dismissal of a complaint because the record did not reveal whether the disciplinary segregation at issue constituted an atypical and significant hardship).

Of course, Carter has apparently never undergone the fifteen-day period of disciplinary confinement which he asserts that Kane improperly imposed upon him, and it would seem most surprising (although perhaps not impossible) for him to be required to do so some five and one-half years later. If it is now impossible for Carter to undergo this period of disciplinary confinement, then the only relevant harm that Carter has suffered is the presence of the additional sentence on his record. The parties have not briefed the question whether the inclusion of this sentence on his record is an "atypical and significant hardship," and I will therefore not address it.

## II. The Second Hearing

### A. *Insufficient Evidence*

█ Carter's amended complaint asserts that there was insufficient evidence presented at his second hearing before Kane. Judge Welsh's R & R finds that, under *Superintendent, Massachusetts Correctional Institution v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), it is only necessary for Kane to demonstrate that there was "some evidence" to support his decision. The R & R notes that Kane's decision was supported by a misconduct report submitted by a correctional officer who witnessed the relevant events. This qualifies as "some evidence." [3] Thus, I agree with Judge Welsh that this element of Kane's motion for summary judgment should be granted.

### B. *Retaliation*

Kane also seeks summary judgment as to Carter's claim that Kane retaliated against Carter during the second hearing because Carter had a civil suit pending against Kane. Kane states, in an affidavit, that Carter did not ask him to recuse himself, and that he was not aware that Carter had a lawsuit pending against him. Kane asserts that there is therefore not a genuine issue of material fact as to whether he retaliated against Carter.

Carter's only factual averment on this point is the statement that "Kane purposely deleted any mentioning in his report of July 8, 1993 what plaintiff's motion to recuse himself was based [on] and therefore, a substantial portion of evidence is not available for that reason." Carter's Reply/Affidavit at 7. This statement indicates that there was a recusal motion, that the motion had some stated basis, and that Carter believes that the stated basis would have been useful evidence in this case. Although Carter does not indicate precisely what the basis for his motion was, there seem to be two strong possibilities: (1) Carter's pending civil litigation against Kane, and (2) a possible belief by Carter, based on his previous appearances before Kane, that Kane was biased against him. The R & R recommends granting summary judgment in favor of Kane on the ground that the affidavit presented by Carter does not state with sufficient specificity that Carter told Kane at the time that Carter made his recusal request that he had lawsuits pending against Kane.

█ I will not reach the question whether Carter's affidavit suffices to meet the specificity requirements of Rule 56, because I find that, under either of the above two interpretations of that affidavit, Kane would be entitled to judgment as a matter of law. Carter's claim can be framed either as one that Kane was not an impartial hearing examiner—in which case it would fit into the legal framework discussed above—or as a claim that Kane retaliated against Carter. As to a claim that Kane was not impartial, inmate

---

**3.** Carter's testimony contradicted this report, but *Hill* specifically found that a hearing examiner's decision could credit only some of the evidence in the record and still meet the "some evidence" standard. *See id.*

civil rights litigation is widespread, and a principal means by which an inmate may challenge the result of a disciplinary proceeding is in fact to sue an official involved in that proceeding. Whether Carter based his recusal request on his pending litigation or on a belief that Kane had not been impartial in previous proceedings, Kane's refusal to recuse himself would not cast sufficient doubt on Kane's impartiality to raise due process questions.[4]

■■■■■ For much the same reason, Carter's claim is also insufficient if it is read as one of retaliation. An essential element of a section 1983 retaliation claim is a showing that the plaintiff's exercise of a right (here, the right to bring a lawsuit) was a substantial or motivating factor in the defendant's decision. *See Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Even if Carter told Kane of his pending litigation, this would not suffice to demonstrate that Kane's decision at the disciplinary hearing was motivated by Carter's lawsuit. Although pending inmate civil rights litigation might well make out part of a retaliation case, *see Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir.1983), pending litigation alone cannot suffice to demonstrate a purpose to retaliate. *See id.* at 13–14 (listing other circumstantial evidence that pointed towards retaliation).

An appropriate order follows.

### ORDER

For the reasons set forth in the memorandum filed herewith, it is hereby ORDERED that:

1. The report and recommendation of Judge Welsh is APPROVED and ADOPTED;

2. As to Carter's first hearing before Kane, Kane's motion for summary judgment is GRANTED as to Carter's substantive due process claim, and DENIED as to Carter's procedural due process claim.

3. Kane's motion for summary judgment is GRANTED as to both of Carter's claims based on Carter's second hearing before Kane.

---

4. Kane's alleged failure to record Carter's recusal motion in the record of the disciplinary proceeding is suggestive, but also does not suffice to call his impartiality into question. Kane's omission could very easily have been an oversight.