**Dennis JUBILEE, Plaintiff,**

v.

**Martin HORN, et al., Defendants.**

**Civil Action No. 96–3818.**

United States District Court,
E.D. Pennsylvania.

Aug. 22, 1997.

Dennis D. Jubilee, Graterford, PA, pro se.

John O.J. Shellenberger, John G. Knorr, III, Office of Atty. Gen., Philadelphia, PA, for Defendants.

## MEMORANDUM

JOYNER, District Judge.

Plaintiff Dennis Jubilee ("Plaintiff"), a *pro se* litigant, is a prisoner at the Pennsylvania State Correctional Institution at Graterford ("SCIG"). Defendants are numerous officials and employees of the Pennsylvania Department of Corrections ("DOC") and Pennsylvania Board of Probation and Parole (the "Board"). Plaintiff instituted this 42 U.S.C. § 1983 action alleging that Defendants' parole procedures violated his rights under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. Plaintiff seeks monetary damages.

On December 10, 1996, we entered an Order dismissing this action in its entirety with prejudice. On December 23, 1996, Plaintiff filed a Motion to Alter or Amend Judgment. That motion, taken together with a supporting memorandum filed on January 22, 1997, sought reconsideration of our December 10 Order, leave to file an amended Complaint containing three additional claims, and the appointment of counsel. On April 7, 1997, we granted reconsideration in part by reinstating Plaintiff's substantive due process and equal protection claims. 959 F.Supp. 276 (E.D.Pa.1997)(hereinafter the "April 7 Memorandum"). We also denied Plaintiff's second and third requests without prejudice. *Id.*

Defendants filed their Answer to the Complaint on April 28, 1997. On May 23, 1997,

Defendants moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure claiming qualified immunity from this suit. Plaintiff filed his response on July 7, 1997, pursuant to an enlargement of time granted by this Court. We resolve this motion today.

## BACKGROUND

Plaintiff alleges the following facts. On November 14, 1994, Plaintiff was returned to SCIG for violating the curfew provisions of his parole. After a hearing, the Board recommitted Plaintiff for twelve months for the technical violation and set reparole eligibility for on or after November 14, 1995. On or about October 30, 1995, the Board notified Plaintiff that it was suspending the reparoling portion of this directive and was going to review Plaintiff's reparole eligibility status once again. This second reparole review process began in December 1995 and was not completed until July 1996 because Defendants intentionally delayed processing paperwork and completing other procedures necessary for reparole consideration. Further, prison officials purposefully sent the Board inaccurate information to consider in reviewing Plaintiff's reparole eligibility. At the conclusion of this second reparole review, the Board set no new reparole eligibility date, ordered Plaintiff to participate in various treatment programs, and set a review date of his reparole status for July 1997.

## DISCUSSION

### I. Legal Standards

A motion for judgment on the pleadings pursuant to Rule 12(c) is treated under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). *DeBraun v. Meissner*, 958 F.Supp. 227, 229 (E.D.Pa.1997). We accept all well-pleaded allegations in the complaint as true and draw all inferences in Plaintiff's favor. *Pennsylvania Nurses Association v. Pennsylvania State Education Association*, 90 F.3d 797, 799–800 (3d Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 947, 136 L.Ed.2d 835 (1997). We may grant the motion only if Plaintiff has alleged no set of facts which would entitle him to relief. *DeBraun*, 958 F.Supp. at 229.

Defendants seek judgment on the pleadings based on the doctrine of qualified immunity. In *Harlow v. Fitzgerald*, the Supreme Court defined the doctrine as follows: "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Court later clarified this objective test by explaining that "to defeat qualified immunity it is not sufficient that the right at issue be clearly established as a general matter. Rather, the question is whether a reasonable public official would know that his or her *specific conduct* violated clearly established rights." *Grant v. City of Pittsburgh*, 98 F.3d 116, 121 (3d Cir.1996) (citing *Anderson v. Creighton*, 483 U.S. 635, 636–37, 107 S.Ct. 3034, 3037–38, 97 L.Ed.2d 523 (1987)) (emphasis in original). The relevant legal principles must be clearly established at the time the official acted and the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039; *see also Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

■ Lacking a clear statement from the Supreme Court regarding "what nature of precedents are necessary to constitute a 'clearly established' right," *Lattany v. Four Unknown U.S. Marshals*, 845 F.Supp. 262, 266 n. 4 (E.D.Pa.1994), the Third Circuit has "adopted a broad view of what constitutes an established right of which a reasonable person would have known...." *Stoneking v. Bradford Area School District*, 882 F.2d 720, 726 (3d Cir.1989) (quoting *Sourbeer v. Robinson*, 791 F.2d 1094, 1103 (3d Cir.1986)). It is not necessary that there have been precedent directly on point when the official acted. *DiJoseph v. City of Philadelphia*, 953 F.Supp. 602, 606 (E.D.Pa.1997). Rather, there must be "some but not precise factual correspon-

dence between relevant precedents and the conduct at issue." *In re City of Philadelphia Litig.,* 49 F.3d 945, 970 (3d Cir.) (quoting *People of Three Mile Island v. Nuclear Regulatory Comm'rs,* 747 F.2d 139, 144 (3d Cir. 1984)), *cert. denied,* —— U.S. ——, 116 S.Ct. 176, 133 L.Ed.2d 116 (1995); *see also DiJoseph,* 953 F.Supp. at 606 (quoting same).

■ Finally, because qualified immunity is an *"immunity from suit* rather than a mere defense to liability," the issue must be decided as early as possible in the litigation. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985)(emphasis in original). We therefore endeavor to resolve the issue at this point even before any discovery has been exchanged in this matter. *Id.*

## II. Application of the Standards to this Case

### A. Substantive Due Process

In our April 7 Memorandum, we first reaffirmed our initial ruling that Plaintiff had failed to make out a procedural due process claim because "a prisoner has no right to be released before the expiration of a valid sentence arising under either the Constitution itself or Pennsylvania law." 959 F.Supp. at 279 (citing cases). We also held, however, that despite the absence of a protected liberty interest in parole Plaintiff had stated a substantive due process claim by alleging the arbitrary and capricious application of Defendants' parole procedures.[1] The precise question now before us with respect to this claim whether a reasonable public official would know that the specific alleged conduct—the intentional delay in processing Plaintiff's reparole review and the consideration of inaccurate information in deciding his reparole status—violated clearly established rights under the Due Process Clause. *See Grant,* 98 F.3d at 121.

In holding that Plaintiff had stated a substantive due process claim, we relied primarily on the decision of the panel majority in *Block v. Potter,* 631 F.2d 233 (3d Cir.1980). *See* 959 F.Supp. at 279. *Block* involved the habeas corpus petition of a Virgin Islands prisoner whose parole application had been denied on the grounds that "a person like Block who had enjoyed the social advantages of financial security, a college and post-graduate education and professional employment, should be treated more harshly than the 'typical Virgin Islands parole applicant.' " Id. at 235. The majority began its analysis by recognizing that the petitioner had no liberty interest in parole release. *Id.* (citing *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)). The majority reasoned, however, that *Greenholtz* did not "contravene the time-honored principle that 'the touchstone of due process is protection of the individual against arbitrary action of government.' " *Block,* 631 F.2d at 235 (quoting *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2975–76, 41 L.Ed.2d 935 (1974)). Thus, after noting the "fundamental due process limitation against capricious decisionmaking," the majority held that

> [e]ven if a state statute does not give rise to a liberty interest in parole release under *Greenholtz,* once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons. Consequently, in alleging that the [Board of Parole] acted arbitrarily by basing its decision on impermissible grounds, we believe that Block has stated a valid due process claim that this Court must resolve.

*Id.* at 236. We then noted in our April 7 Memorandum that the Third Circuit reaf-

---

**1.** We described the relevant allegations as follows:

> Liberally construing the Complaint, we find that Plaintiff alleges that Defendants have intentionally delayed completing the paperwork and other procedures necessary for Plaintiff's parole consideration; deliberately used erroneous and incorrect information in reviewing his parole status; and maliciously used their pro-

cedures to prevent him from being considered for parole "in a timely fashion." In sum, Plaintiff alleges that Defendants "arbitrarily and capriciously" applied their parole policies and procedures to Plaintiff, thereby "discriminating against [him] for no reason."

959 F.Supp. at 280 (citations to complaint omitted).

firmed this holding in *Burkett v. Love*, 89 F.3d 135 (3d Cir.1996), in which the panel majority quoted the *Block* majority's language that "[a] legislative grant of discretion does not amount to a license for arbitrary behavior." *See* 959 F.Supp. at 280 (quoting *Burkett*, 89 F.3d at 139 (quoting *Block*, 631 F.2d at 236)).

In the motion before the Court, Defendants argue strenuously that Plaintiff "cannot pursue a substantive due process claim in the absence of a constitutionally protected interest in parole." Defs.' Mem. at 10. Defendants argue that *Burkett* stands only for the proposition "that state officials cannot deny parole for reasons otherwise constitutionally impermissible" and that such denial would "create either an equal protection or First Amendment claim" rather than a due process claim *Id.* at 9–10. Defendants characterize the majority's opinion in *Block* as "an aberration" to the extent that it suggests otherwise. *Id.* at 10.

*Block* may not be dismissed as an "aberration" for three reasons. First, while Defendants' interpretation of *Burkett* is not unreasonable, it is inescapable that the *Burkett* majority described the holding in *Block* without expressing any disagreement with it. Second, another Court of Appeals has held that substantive due process limits a parole board's actions even though the relevant state statute does not create a liberty interest in being released on parole. In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir.1991), the Eleventh Circuit held that the defendants' admitted reliance on false information constituted arbitrary and capricious treatment in violation of the Due Process Clause. Third, at least two other members of this Court have recently cited *Block* for the proposition that a substantive due process violation may

occur in the absence of a protected liberty or property interest. The more recent case *Watkins v. Horn*, 1997 WL 266837 (E.D.Pa. May 13, 1997), *amended by* 1997 WL 327446 (E.D.Pa. June 10, 1997), involves a state prisoner's § 1983 lawsuit that Judge Robert F. Kelly characterized as "identical" to the instant action. Judge Kelly agreed with this Court's interpretation of *Block* and *Burkett* in denying the defendants' motion to dismiss the plaintiff's substantive due process claim. *See id.* at *3. In the second case, *Carter v. Kane*, 938 F.Supp. 282 (E.D.Pa.1996)(Pollak, J.), a state prisoner claimed that his due process rights were violated during prison disciplinary proceedings because the hearing examiner had not been impartial. After reasoning that this claim could be framed either as one of substantive or procedural due process, Judge Pollak wrote as follows:

> The fact that a particular governmental decision does not implicate a constitutionally protected interest, such as a liberty or property interest, does not mean that there are no restrictions on the manner in which the government may make that decision. A governmental decision may still not be made in an 'arbitrary or constitutionally impermissible' fashion.

*Id.* (quoting *Block*, 631 F.2d at 236). Judge Pollak also cited *Monroe* as an example of this proposition. *Carter*, 938 F.Supp. at 285.[2]

We nonetheless agree with Defendants that these cases do not clearly establish the substantive due process rights that Plaintiff asserts in this case. We do so for two reasons. First, other Courts of Appeals that have confronted situations analogous to *Monroe* have held that such facts do not give rise to a substantive due process claim. *See Maghe v. Koch*, 1997 WL 76014, at * 4 (10th

---

2. Judge Pollak stated that to establish a substantive due process violation, the plaintiff must show that the conduct in question " 'shocks the conscience.' " *Carter*, 938 F.Supp. at 285 (quoting *Fagan v. City of Vineland*, 22 F.3d 1296, 1304–05 (3d Cir.1994)(en banc)). Judge Pollak explained that while this standard is applied differently depending on the circumstances, "[t]o the extent that a governmental function is adjudicatory, or quasi-judicial, in nature, the arbitrary exercise of official power in conducting that function is particularly likely to shock the conscience, because of the greater expectation of

regularity in such situations" than in situations necessitating heat-of-the-moment decisions. *Carter*, 938 F.Supp. at 285–86. *Fagan* could therefore be reconciled with *Monroe* and *Block*, both of which involved an adjudicatory or quasi-judicial function of government. Moreover, while Judge Pollak held that the arbitrary conduct alleged in *Carter* was not "sufficiently severe to shock the conscience," he noted that *Monroe* and *Block* concerned irregularities substantially more serious "most notably" because they "involved an inmate's eligibility for parole." *Id.* at 286.

Cir.1997)("Because Maghe has no liberty interest in obtaining parole under the discretionary Oklahoma parole system, he may not invoke section 1983 as a basis for challenging the validity of information considered by the parole board or the adequacy of the process or lack of process for correcting the information."), *cert. denied,* — U.S. —, 117 S.Ct. 2420, 138 L.Ed.2d 183 (1997); *Johnson v. Rodriguez,* 110 F.3d 299, 308–09 n. 13 (5th Cir.1997)(arguing that *Monroe* was impliedly overruled by *O'Kelley v. Snow,* 53 F.3d 319 (11th Cir.1995)). Second, several recent Third Circuit decisions have held in different contexts that substantive due process claims may not be maintained in the absence of constitutionally protected interests. For example, our Court of Appeals recently stated in a case regarding bidding on public contracts that "a substantive due process claim grounded in an arbitrary exercise of governmental authority may be maintained only where the plaintiff has been deprived of a 'particular quality of property interest.'" *Independent Enterprises v. Pittsburgh Water,* 103 F.3d 1165, 1179 (3d Cir.1997) (quoting *DeBlasio v. Zoning Bd. of Adjustment,* 53 F.3d 592, 600 (3d Cir.1995)(involving land use restrictions)); *see also Johnson,* 110 F.3d at 308 ("because Texas prisoners have no protected liberty interest in parole they cannot mount a challenge against any state parole review procedure on procedural (or substantive) Due Process grounds").

Thus, in light of this conflicting precedent, we agree with Defendants that they are entitled to qualified immunity from Plaintiff's substantive due process claim. There is substantial authority upon which Defendants could reasonably believe that their alleged conduct did not violate clearly established rights under the Due Process Clause. We therefore enter judgment in Defendants' favor pursuant to Rule 12(c) on Plaintiff's substantive due process claim.

---

3. As noted *supra,* the Complaint, construed liberally, alleges that Defendants intentionally delayed completing the paperwork and other procedures necessary for Plaintiff's parole consideration; deliberately used erroneous and incorrect information in reviewing his parole status; and maliciously used classification and staffing procedures to prevent him from being considered for parole "in a timely fashion."

### B. Equal Protection

■ The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Plaintiff alleges in this case that Defendants' consideration of inaccurate information in deciding his eligibility for reparole and Defendants' intentional delay in processing his reparole application caused him not to be afforded "the process ... that is available to inmates with like status" and to be discriminated against "for no reason."[3] Liberally construing these allegations, we held that Plaintiff had stated a § 1983 equal protection claim in our April 7 Memorandum. *See* 959 F.Supp. at 280.

This holding relied primarily on *Brandon v. District of Columbia Board of Parole,* 734 F.2d 56, 60 (D.C.Cir.1984), *cert. denied,* 469 U.S. 1127, 105 S.Ct. 811, 83 L.Ed.2d 804 (1985). In *Brandon,* the plaintiff alleged that he was reparoled two years later than the "the average parole violator in his circumstances." *Id.* at 58. The plaintiff did not allege discrimination based on his membership in an identifiable class or on the exercise of a fundamental right. Rather, the plaintiff claimed that the parole board had "purposefully singled him out for harsher treatment than that accorded to similarly situated prisoners." *Id.* at 60. The D.C. Circuit reversed the district court's *sua sponte* dismissal of the complaint, explaining that

[e]ven in the absence of a fundamental right or a suspect classification, equal protection requires that a classification between similarly situated individuals bear some rational relationship to a legitimate state purpose.... Equal protection does require ... that the state act 'sensibly and

---

Complaint, ¶¶ 29, 30, 32, 33 and 34. While Plaintiff does not claim specifically that other similarly situated prisoners received more efficient or expeditious resolution of their reparole review, he does allege that he "has not been afforded the process ... that is available to inmates with like status" and that he "has been discriminated against for no reason." Complaint, ¶¶ 28, 35.

in good faith'; parole decisions, like all other forms of state action, cannot be based on impermissible purposes.

*Id.* (quoting *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 439, 102 S.Ct. 1148, 1159–60, 71 L.Ed.2d 265 (1981) (Blackmun, J., concurring)). As we noted in our April 7 Memorandum, the D.C. Circuit later affirmed the entry of summary judgment against the plaintiff in *Brandon* on the grounds that he failed to " 'establish that he was treated differently than other prisoners in his circumstances with regard to the Board's failure to afford meaningful reparole consideration because of its delay in obtaining a forensic psychiatric evaluation.' " *Jubilee,* 959 F.Supp. at 280 n. 5 (quoting *Brandon v. District of Columbia Bd. of Parole,* 823 F.2d 644, 650 (D.C.Cir.1987)).

In our April 7 Memorandum, we cited two cases in which courts applied this language in assessing whether prisoners who had not alleged differential treatment based on identification with a particular class had nonetheless stated § 1983 equal protection claims. One of these cases is a recent unpublished decision of a member of this Court. *See Hayes v. Muller,* 1996 WL 583180, * 9 (E.D.Pa.1996 Oct. 10, 1996)(Padova, J.). In *Hayes,* Judge Padova held that the prisoner had not stated a claim under this standard because he failed to allege (1) that he had been "singled out for delay" and (2) the "presence of any intentional or purposeful discrimination resulting on the part of Defendants." *Id.* at * 9. In the second case, *Klein v. Pyle,* 767 F.Supp. 215 (D.Colo.1991), the plaintiff alleged that his security classification and housing facilities differed from inmates in similar circumstances. Because the plaintiff had alleged that he "was purposefully singled out for harsher treatment than that accorded to similarly situated prisoners," the court held that he had stated an equal protection claim. *Klein,* 767 F.Supp. at 218 (quoting *Brandon,* 734 F.2d at 60). Likewise, we concluded in this case that Plaintiff's allegations that he had been treated differently than "inmates of like status," *see supra* note 3, were sufficient to state a claim upon which relief could be granted. *See also Watkins,* 1997 WL 266837, at * 3–4 (relying on *Brandon).*

■ Defendants now argue that they are entitled to qualified immunity from this claim because Plaintiff does not allege discrimination based on his membership in an identifiable class. *See generally Romer v. Evans,* —— U.S. ——, —— – ——, 116 S.Ct. 1620, 1627–29, 134 L.Ed.2d 855 (1996). Defendants point to several cases in this district holding that, absent allegations of a discriminatory classification, no two prisoners may ever be regarded as similarly situated in the context of "discretionary, individualized decisions" such as determining eligibility for parole. Defs.' Mem. at 14. Defendants rely particularly on *Rowe v. Cuyler,* 534 F.Supp. 297 (E.D.Pa.1982)(Bechtle, J.), *aff'd,* 696 F.2d 985 (3d Cir.1982). In *Rowe,* a prisoner brought suit under § 1983 claiming that he was denied participation in a temporary home furlough program while "inmates with deplorable institutional records, inmates with a history of assault and escape, and inmates who have [a] long drug history and absconded during their involvement in the Pre–Release programs have participated and still participate in same." 534 F.Supp. at 301. Thus, the plaintiff in *Rowe* did not allege discrimination based on his membership in a particular class. Judge Bechtle held that these allegations failed to state an equal protection claim, reasoning that "it is difficult to believe that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics." *Id.* Defendants have directed us to two unpublished decisions in which members of this Court dismissed equal protection claims where the plaintiff had not alleged discrimination based on a particular classification. *See Carter v. Zimmerman,* 1989 WL 64581 (E.D.Pa. June 12, 1989) (Newcomer, J.), *aff'd,* 897 F.2d 521 (3d Cir. 1990); *Bradley v. Jeffes,* 1986 WL 6865 (E.D.Pa. June 18, 1986) (Weiner, J.). In both cases, the courts followed Judge Bechtle's reasoning in *Rowe. See also Amendolia v. DeRamus,* 1991 WL 24946 (E.D.Pa. Feb.25, 1991) (Van Antwerpen, J.), *aff'd,* 937 F.2d 596 (3d Cir.1991).

In light of *Rowe* and the cases that have followed it, we hold that Defendants are entitled to qualified immunity on Plaintiff's equal protection claim. Despite the authority that supports our decision that Plaintiff's allegations stated a claim upon which relief could be granted, there is authority within this district upon which Defendants could reasonably believe that their alleged conduct did not violate clearly established rights under the Equal Protection Clause because Defendants are not alleged to have discriminated against Plaintiff based on his membership in an identifiable class. Judgment is therefore also entered pursuant to Rule 12(c) on Plaintiff's equal protection claim.

An appropriate Order follows.

### ORDER

AND NOW, this 22nd day of August, 1997, upon consideration of Defendants' Motion for Judgment on the Pleadings (Docket No. 29) and Plaintiff's response thereto, it is hereby ORDERED that the Motion is GRANTED and JUDGMENT is ENTERED in favor of all Defendants and against Plaintiff on Count I of the Complaint. All other claims in the Complaint having been dismissed, it is hereby ORDERED that Plaintiff's Motion for the Appointment of Counsel (Docket No. 28) is DENIED as MOOT and the Clerk shall mark this case CLOSED.